No. 22-30122

# UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

DONALD BARNES,

*Appellant,*

**v.**

DARRYL VANOY ET AL,

*Appellees.*

On Appeal from the United States District Court
For the Middle District of Louisiana
No. 3:19-CV-764

## APPELLANT'S OPENING BRIEF

Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
(202) 455-4399

## **CERTIFICATE OF INTERESTED PERSONS**

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this Court may evaluate possible disqualification or recusal.

A.  Donald Barnes, Plaintiff/Appellant;

B.  Samuel D. Weiss, Attorney for Appellant;

C.  Amaris Montes, Attorney for Appellant;

D.  Darryl Vannoy, Defendant/Appellee;

E.  Peter Lollis, Defendant/Appellee;

F.  John Maples, Defendant/Appellee;

G.  Shawn Miller, Defendant/Appellee.

*/s/ Amaris Montes*

Amaris Montes

## STATEMENT REGARDING ORAL ARGUMENT

Donald Barnes respectfully requests an oral argument because he believes it would assist the Court in its analysis of the disputed constitutional and legal issues presented on appeal and would enable counsel to address any questions the Court may have.

# **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES** ................................................................. i

**JURISDICTIONAL STATEMENT** ....................................................1

**STATEMENT OF ISSUES** ...............................................................1

**STATEMENT OF THE CASE** ..........................................................2

**SUMMARY OF THE ARGUMENT** ..................................................7

**ARGUMENT** ....................................................................................8

  I.   The District Court Erred in Granting Defendants' Summary Judgment Motion Because the Grievance Procedure was Unavailable. ...................8

  II. This Court Should Not Affirm on the Alternative Ground of Defendants' Entitlement to Qualified Immunity...................................................17

    A.  The Court Should Not Determine the Issue of Qualified Immunity When It Was Not Addressed by the District Court Below..............................17

    B.  Barnes Pleaded an Eighth Amendment Violation......................................19

    C.  Barnes's Alleged Constitutional Violation Was Clearly Established.........26

**CONCLUSION**................................................................................32

**CERTIFICATE OF SERVICE** .......................................................33

**CERTIFICATE OF COMPLIANCE** ...............................................34

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Anderson v. Creighton*, 483 U.S. 635 (1987) ............................................................28

*Baugh v. Taylor*, 117 F.3d 197 (5th Cir. 1997) ......................................................9

*Brantner v. Freestone Cnty. Sheriff's Office*, 776 Fed. App'x 829 (5th Cir. 2019) 14

*Breeding v. U.S. Dep't of Interior*, No. CIV 14-948, 2014 WL 5040784 (E.D. La. Sept. 29, 2014) ..........................................................................................................7

*Brown v. Drew*, 452 F. App'x 906 (11th Cir. 2012) ................................................18

*Cantu v. Jones*, 293 F.3d 839 (5th Cir. 2002) .........................................................30

*Cantwell v. Sterling*, 788 F.3d 507 (5th Cir. 2015). ................................................19

*Coker v. Strain*, No. CIV.A. 08-678, 2010 WL 3922134 (E.D. La. Sept. 30, 2010) ............................................................................................................................27

*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) ........................................................28

*Cowart v. Erwin*, 837 F.3d 444 (5th Cir. 2016) ......................................................18

*Davis v. Fernandez*, 798 F.3d 290 (5th Cir. 2015) ..................................................14

*Davis v. LeBlanc*, No. CV10-01920, 2012 WL 1854748 (W.D. La. Apr. 16, 2012) ............................................................................................................................27

*Davis v. United States*, 422 F.2d 1139 (5th Cir. 1970) ...........................................20

*Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) ......................................................14

*Dole v. Chandler*, 438 F.3d 804 (7th Cir. 2006) .....................................................17

*Edmond v. Eaves*, 70 F. App'x 159 (5th Cir. 2003) ................................................24

*Farmer v. Brennan*, 511 U.S. 825 (1994). ...................................................... passim

*Harper v. Dourrette*, 107 F. App'x 444 (5th Cir. 2004) ................................... 27, 31

*Hinojosa v. Johnson*, 277 F. App'x 370 (5th Cir. 2008) ................................... 22, 24

*Hinton v. Martin*, 742 F. App'x 14 (5th Cir. 2018) .................................................15

*Hope v. Pelzer*, 536 U.S. 730 (2002) ............................................................... 29, 33

*Johnson v. Johnson*, 385 F.3d 503 (5th Cir. 2004) ........................................... 28, 31

*Johnston v. Lucas*, 786 F.2d 1254 (5th Cir. 1986). .................................................23

*Lanaghan v. Koch*, 902 F.3d 683 (7th Cir. 2018) ...................................................17

*Longoria v. Texas*, 473 F.3d 586 (5th Cir. 2006) ............................................. 21, 30

*Luna v. Davis*, 59 F.4th 713 (5th Cir. 2023) .................................................... 28, 32

*McCoy v. Alamu*, 141 S. Ct. 1364 (2021) ........................................................ 29, 33

*Mobley v. Vine*, No. 21-40814, 2022 WL 4395711 (5th Cir. Sept. 23, 2022) .........14

*Morgan v. Hubert*, 335 F. App'x 466 (5th Cir. 2009) ...................................... 22, 30

*Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476 (5th Cir. 2006) ...................20

*Ross v. Blake*, 578 U.S. 632 (2016) .................................................................. 11, 12

*Sapp v. Kimbrell*, 623 F.3d 813 (9th Cir. 2010) ......................................................17

*Saucier v. Katz*, 533 U.S. 194 (2001) ......................................................................22

*Scott v. Gardner*, 287 F. Supp. 2d 477 (S.D.N.Y. 2003)...........................................7

*Singleton v. Wulff*, 428 U.S. 106 (1976) ................................................................20

*Sparks v. Champagne*, No. CV 20-0903, 2020 WL 3950091 (E.D. La. June 30, 2020) ........................................................................................................................7

*Stevens v. Hay's Pharmacy*, 52 F.3d 1068 (5th Cir. 1995) ......................................9

*Taylor v. Gibson*, 529 F.2d 709 (5th Cir. 1976). ....................................................21

*Taylor v. Riojas*, 141 S. Ct. 52 (2020) ............................................................ 29, 33

*Taylor v. Stevens*, 946 F.3d 211 (5th Cir. 2019)......................................................33

*Turner v. Burnside*, 541 F.3d 1077 (11th Cir. 2008).............................................18

*Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998) ............................................19

*Wheater v. Shaw*, 719 F. App'x 367 (5th Cir. 2018) ....................................... 15, 16

*Wilson v. Epps*, 776 F.3d 296 (5th Cir. 2015) ................................................. 12, 19

*Wilson v. Hooper*, CV18-698, 2019 WL 6003347 (M.D. La. Oct. 22, 2019).. 29, 30

*Wood v. Milyard*, 566 U.S. 463 (2012)....................................................................20

## Statutes

28 U.S.C. § 1291 ................................................................................................ 3, 18

28 U.S.C. § 1331 ..........................................................................................................3

28 U.S.C. §1915(a)(3).................................................................................................9

42 U.S.C § 1997e ......................................................................................................11

## Other Authorities

Fed. R. App. P. 24(a)(3)..............................................................................................9

## Regulations

La. Admin. Code Title 22 § 325 ........................................................................ 12, 13

## JURISDICTIONAL STATEMENT

The district court had subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291 because the district court issued a final judgment on February 23, 2022, which disposed of all claims. ROA.320-21. Plaintiff-Appellant Donald Barnes filed a timely notice of appeal on March 9, 2022. ROA.324

## STATEMENT OF ISSUES

1. Whether the district court erred in granting summary judgment to Defendants under 42 U.S.C § 1997(e) for failure to exhaust his administrative remedies when he timely filed a grievance, but it was mistakenly screened by prison officials as untimely and there were no avenues to appeal this mistake made by the officers.

2. Whether Defendants are entitled to qualified immunity when the district court did not reach the question below and when Barnes has alleged that Defendants violated clearly established law when they failed to protect him under the Eighth Amendment.

## **STATEMENT OF THE CASE**

Donald Barnes is incarcerated in the Louisiana State Penitentiary, Angola. On April 15, 2019, while Barnes was sleeping, his cellmate, Terrence Napoleon, cut his throat from cheek to cheek. ROA.13. Napoleon had previously killed another individual in the prison and repeatedly told Defendants his intention to hurt the next person who was housed with him. *Id.*

Two weeks prior, prison officials put Terrance Napoleon in administrative segregation in the Camp D unit after he used a brick to kill another prisoner. *Id.* While there, Terrence Napoleon told Camp D officers and supervisors, including Defendants Lollis, Maples, Ashley, and Miller, "if you put 'anyone' in this cell they be carrying him out on a stretcher." *Id.*; ROA. 289. Defendants ignored these threats. ROA.13. In early April, correctional officers put another individual, Robert Galfreth, in a cell near Napoleon. *Id.* That night, Galfreth's cellmate slashed Galfreth's face and neck with a sharp object, causing serious, life-threatening injuries. *Id.* This was the second person almost killed in this one administrative segregation unit within two weeks. ROA.13.

On April 13, 2019, prison officials placed Donald Barnes in administrative segregation for a work offense. *Id.* Defendants chose to place him in segregation pending a disciplinary hearing, even though they had an alternative option of allowing Barnes to attend "walk in court." *Id.* Once inside the cellblock, Defendants

Miller and Sanford ordered Barnes to enter the cell with Napoleon. Napoleon threatened to harm Barnes, but the officers "steadfastly continued to ignore Napoleon." *Id.* This "aggravated Napoleon's rage" even further. *Id.* They allowed Napoleon to retain a razor in the cell with him. ROA.14.

Two nights later, on April 15, 2019, while Barnes was sleeping, Napoleon took a sharp object and slit Barnes throat from cheek to cheek, "just like he told security he would." ROA.13. Barnes yelled for the guards in fear while he was bleeding profusely from the open wound. ROA.14. The officers "made extra efforts to dodge the spray of blood for fear of contamination, but did not wrap the wound." ROA.14. Because the officers did not wrap his wound, Barnes was forced to hold his own cut neck to stop the flood flow. *Id.*

At some point, Barnes was taken to the prison emergency room where he received numerous stitches. *Id.* The next day, a prison officer told Barnes, "Sorry that had to happen to you, but we had to put you somewhere, even if it[']s in the cell with someone like Napoleon." *Id.*

Barnes timely filed grievance LSP-2019-1471 on July 4, 2019, pertaining to the Defendants failing to protect him from the attack by Napoleon. ROA.215; ROA.290. Defendants improperly rejected the grievance on July 23, 2019 as untimely, believing that he filed outside of the 90-day filing requirement, even though Barnes filed the grievance 82 days after the incident occurred. ROA.214;

ROA.290. Barnes did not proceed to the next level of the grievance process because this mistake by prison officers did not permit him to appeal and he believed "the requirements of 'administrative justiciability' w[ere] satisfied." ROA.297.

Barnes filed the current action on November 5, 2019, *pro se*, seeking monetary and equitable relief, alleging Defendants violated his Eighth Amendment rights by failing to protect him from a substantial risk of harm. ROA.14-15. On October 29, 2021, Defendants sought to dismiss Barnes's complaint, attaching documentation on exhaustion to the motion and moving for summary judgment by arguing that Barnes did not exhaust administrative remedies because Barnes only reached the first step of the administrative grievance process when his initial grievance was incorrectly labelled as untimely. ROA. 206; ROA. 212-17. Relying only on the pleadings in the complaint, Defendants also argued that Barnes "has failed to state a claim against Defendants" under Rule 12, arguing that Defendants are entitled to qualified immunity since "courts of law have not clearly established a right for prisoners to be protected from cellmates with known histories of violence against other inmates." ROA 208-209.[1] Furthermore, Defendants claimed that

---

[1] Defendants often bring both Rule 56 motions for failure to exhaust administrative grievances and Rule 12 motions for the remaining claims on the pleadings, or bring both motions simultaneously for all claims, where courts decide which standard is appropriate. *See e.g., Sparks v. Champagne*, No. CV 20-0903, 2020 WL 3950091, at *1 (E.D. La. June 30, 2020), report and recommendation adopted, No. CV 20-903, 2020 WL 3892876 (E.D. La. July 10, 2020) (Defendants moving for both a 12(b)(6) motion and 56 motion simultaneously on exhaustion and other grounds);

Defendants did not knowingly violate the law because Barnes and Napoleon "were not known enemies prior to this incident, and they had no prior negative history." *Id.* Finally they asserted their actions were justified because there was a "lack of an alternative" to placing Napoleon with Barnes. *Id.*

On January 31, 2022, the magistrate judge recommended granting summary judgment in favor of Defendants on the sole ground that Barnes had failed to exhaust his administrative remedies. ROA.292. The magistrate judge reasoned that, "[t]hough it appears from the record that the plaintiff's grievance was not properly rejected, such action does not rise to the level of 'machination, misrepresentation, or intimidation'" that could make a grievance system functionally unavailable because "it appears to have been a mistake or error." ROA.291. The magistrate judge stated that the "record is devoid of any evidence that any corrections officer used trickery, lies, or threats to prevent Plaintiff from filing a grievance about the claims at issue." *Id.* Additionally, "plaintiff does not allege or demonstrate that he took any efforts to

---

*Breeding v. U.S. Dep't of Interior*, No. CIV 14-948, 2014 WL 5040784, at \*2 (E.D. La. Sept. 29, 2014) (Defendants requesting motions to dismiss or summary judgment on a series of claims including exhaustion, where the district court ultimately analyzed the claims under Rule 12); *see also Scott v. Gardner*, 287 F. Supp. 2d 477, 485 (S.D.N.Y. 2003), on reconsideration in part, 344 F. Supp. 2d 421 (S.D.N.Y. 2004), and on reconsideration in part, No. 02-CV-8963, 2005 WL 984117 (S.D.N.Y. Apr. 28, 2005)("As nonexhaustion is not clear from the face of [the plaintiff's] complaint, the motion is converted to one for summary judgment only to consider the nonexhaustion issues [and] Defendants' remaining arguments that [plaintiff] fails to state a claim will be considered under the Rule 12(b)(6) standard.")

request that the mistake be corrected or utilize the process again." ROA.292. On February 23, 2022, the district court adopted the magistrate judge's report and recommendation in a two-sentence opinion. ROA.320. The district court also did not mention any of Defendants' other grounds for dismissal. ROA.287-92; ROA.320.

Barnes filed a timely Notice of Appeal on March 9, 2022. ROA.324. He filed a motion for leave to proceed in forma pauperis on March 29, 2022. ROA.325-29. On April 18, 2022, the district court denied his petition, certifying that the appeal was not taken in good faith based on the district court's opinion regarding his failure to exhaust. ROA.332-33. Pursuant to 28 U.S.C. §1915(a)(3) and Fed. R. App. P. 24(a)(3), Barnes filed a separate motion to proceed in forma pauperis on appeal on May 20, 2022. ROA.336-39. On June 8, 2022, Barnes paid the filing fee in full. District Court Doc. June 8, 2022. Barnes obtained counsel who entered appearance on June 29, 2022. Doc No. 15.

On November 16, 2022, this Court, without requesting briefing, held that the district court did not err in holding that Barnes's appeal was not taken in good faith and *sua sponte* dismissed the appeal as frivolous. Panel Op. 2.[2]  In its analysis, this

---

[2] Although the panel's text focused on whether Barnes was entitled to proceed in forma pauperis, its citations to Footnote 24 in *Baugh v. Taylor* and 5th Circuit Rule 42.2 made clear that it acknowledged Barnes paid the filing fee but was dismissing the appeal *sua sponte* on the merits for frivolousness. Panel Op. 2; *see Baugh v. Taylor*, 117 F.3d 197, 202 n.24 (5th Cir. 1997) ("Of course, nothing prevents the appellate court from *sua sponte* dismissing the case on the merits pursuant to 5th Cir. R. 42.2 when it is apparent that an appeal would be meritless" even when a

Court held that even though "Barnes argues that the rejection of his grievance as untimely deprived him of the ability to challenge that determination through the second step of the grievance procedure," he was "without support." *Id.* This Court ultimately held that "there was no genuine issue of material fact as to whether he exhausted administrative remedies" because he "effectively concedes that he did not proceed to the second step of the prison grievance procedure." *Id.*

Barnes submitted petitions for panel rehearing and for rehearing *en banc* on November 30, 2022. Doc. No. 47; Doc. No. 48. On January 18, 2023, this Court granted his motion for panel rehearing, and the panel withdrew the November 16, 2022 opinion. ROA.359-60. This Court denied his in forma pauperis motion as moot and set briefing schedule for the present appeal. ROA 360.

## SUMMARY OF THE ARGUMENT

The district court erred in granting Defendants' summary judgment motion under 42 U.S.C § 1997e(a) for failure to exhaust his administrative remedies because this is a textbook example of a grievance system that became unavailable. Barnes took all the necessary steps he could to fully exhaust his administrative procedures,

---

prisoner has paid the filing fee in full). And indeed, dismissal on the basis of in forma pauperis would be improper given that Barnes paid the full filing fee over five months before the panel issued its decision, so his entitlement to in forma pauperis status is irrelevant to his legal right to appeal. *Stevens v. Hay's Pharmacy*, 52 F.3d 1068 (5th Cir. 1995) ("Under Local Rule 42.2, this Court can dismiss an appeal as meritless when it is so frivolous as to be lacking an arguable basis in law or fact.")

but prison officials mistakenly screened his grievance as untimely and there were no avenues he could have taken to remedy the officers' own mistake. Because this Court has repeatedly held that officers' mistakes in handling the grievance procedure may render the grievance procedure as unavailable, this Court should reverse and remand.

Furthermore, the district court did not mention the issue of qualified immunity below and it would be improper for this Court to reach the issue, especially when Barnes has not had the full benefit of discovery. Even if this Court were to decide an issue not raised below, Defendants are not entitled to qualified immunity. Defendants subjected Barnes to a clear risk of harm in violation of clearly established law when they knew that Napoleon previously killed another individual prior to placing him in a cell with Barnes and his razor, even though Napoleon threatened to harm the next person he was housed with and made direct threats to Barnes. Barnes was maimed from ear to ear because of Defendants' deliberate indifference to this clear risk of harm.

## **ARGUMENT**

### **I. The District Court Erred in Granting Defendants' Summary Judgment Motion Because the Grievance Procedure was Unavailable.**

The Prison Litigation Reform Act ("PLRA") requires incarcerated people to exhaust available administrative remedies prior to filing suit in federal court. 42 U.S.C § 1997e. As such, "the exhaustion requirement hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but

8

need not exhaust unavailable ones." *Ross v. Blake*, 578 U.S. 632 (2016). The Supreme Court in *Ross v. Blake* provided three illustrative examples under which "an administrative remedy, although officially on the books, is not capable of use to obtain relief": (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes ... incapable of use ... [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* "To determine what remedies are 'available' and thus must be exhausted, [the Court] must look to 'the applicable procedural rules … defined … by the prison grievance process itself.'" *Wilson v. Epps*, 776 F.3d 296, 299 (5th Cir. 2015) (alteration in original).

Louisiana has a two-step grievance procedure, which requires that a prisoner (1) file a formal grievance within 90 days after an incident had occurred and, (2) appeal the grievance if it is denied. La. Admin. Code Title 22 § 325(G)(1) (describing the first step); *id.* at (J)(1)(b) (describing the second step). But Louisiana has a unique step in its grievance procedure where prior to assigning to the first step, a grievance officer screens all grievances. *Id.* at (I)(1). At this screening stage, the grievance officer either accepts the grievance—in which case it will be processed—

9

or the officer rejects it, meaning the grievance "will not be processed until the noted deficiency is corrected." *Id.* at (I)(1)(a). Reasons to reject grievances include, *inter alia*, that the matter is not appealable (such as a parole decision); there is another remedy in place (such as for lost property); or the grievance failed for an administrative reason, including that the grievance was not timely. *Id.* at (I)(1)(c)(i). Importantly, per the grievance regulations themselves, "[a] rejected request is not appealable to the second step. If a request is rejected … the offender must correct the noted deficiencies and resubmit the request to the ARP screening officer." *Id.* at (I)(1)(c)(iii).

In recommending granting summary judgment to Defendants, the magistrate judge wrote that "[t]hough it appears from the record that the plaintiff's grievance was not properly rejected," this did not make the grievance system functionally unavailable because "it appears to have been a mistake or error" rather than something more devious. ROA.291. This conclusion is incorrect, as there is at least a genuine dispute that the grievance system became unavailable for Barnes. Barnes filed a timely grievance which the prison mistakenly rejected as untimely. ROA.214; ROA.290. The prison's own grievance procedures did not entitle Barnes to take any further steps—he could not appeal, because "[a] rejected request is not appealable to the second step." La. Admin. Code Title 22 § 325 (I)(1)(c)(iii). And he could not "correct the noted deficiencies and resubmit the request to the ARP screening

officer," both because (1) he had no deficiencies to correct, include the "noted" one; and (2) if he filed a new request, it would no longer be timely because his grievance was initially screened on July 23, 2019, 101 days after he was brutally attacked. *Id.*; ROA.214. Furthermore, while Louisiana's grievance policy gives incarcerated people guidance on what to do if their grievance is rejected due to their *own error*, it gives them no instruction on what to do if the *grievance officer errs*. *See* La. Admin. Code Title 22 § 325(I)(1)(c). In sum, this is the archetypal example of a grievance system that became unavailable when Barnes had no possible avenues for filing a valid grievance according to Louisiana regulations.

The magistrate court erred in holding the grievance system available because the grievance officer's mistake "does not rise to the level of 'machination, misrepresentation, or intimidation'" and "[t]the record is devoid of any evidence that any corrections officer used trickery, lies, or threats to prevent Plaintiff from filing a grievance about the claims at issue." ROA. 291. This Court's law establishes otherwise, holding that an officer's mistake in mishandling a grievance or not providing individuals with correct information can render a grievance system unavailable— "trickery, lies, or threats" are not necessary. *See Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) (administrative remedies are only available if the prisoner had "a fair, reasonable opportunity to apprise himself of the procedures"); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("When a prisoner has no means

of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable"); *Brantner v. Freestone Cnty. Sheriff's Office*, 776 Fed. App'x 829, 834 (5th Cir. 2019) (a prisoner is "thwart[ed]" from using the grievance procedure if they are "supplied with documents that only partially explained" that procedure"); *Mobley v. Vine*, No. 21-40814, 2022 WL 4395711, at *1 (5th Cir. Sept. 23, 2022) (holding that the record contained facts suggesting the grievance system was unavailable to him "because of the actions of prison authorities.").

This case most clearly parallels *Hinton v. Martin*, 742 F. App'x 14 (5th Cir. 2018), and *Wheater v. Shaw*, 719 F. App'x 367 (5th Cir. 2018), where this Court held that the plaintiffs sufficiently presented facts that suggested that the prison's administrative grievance process was unavailable to them. In *Hinton*, prison officials rejected the plaintiff's grievances for a technical reason: the purported ground that his grievance contained multiple complaints instead of following the prison's rule of one complaint per grievance. *Id.* at 15. Though the district court dismissed his complaint for failing to exhaust his administrative grievances, the plaintiff argued that the grievance system was unavailable because the prison officials erroneously rejected his grievances since the grievances only raised one complaint; there was no provision to appeal the procedural rejections; and he was unable to figure out how to correct the issue. *Id.* This Court held that these arguments were sufficient to vacate

the district court's dismissal and remand for the district court to newly analyze the case under the *Ross v. Blake* standard. *Id.*

In *Wheater*, the plaintiff alleged that he submitted three first-level grievances about the defendants' failure to protect him from being stabbed by another incarcerated person before being transferred to another facility. *Wheater*, 719 F. App'x at 368. While at the new facility, he inquired about his grievances, but he was told that there was no record of the grievances, meaning he should refile. *Id.* at 370. He attempted to comply, but by the time he tried to file again, the grievance was untimely and not accepted. *Id.* The defendants argued that the plaintiff in fact withdrew his stabbing grievance and that "even if the grievances 'were somehow mishandled,' [the plaintiff] should have proceeded to step two," in other words, an appeal. *Id.* This Court held that if the "administrators mistakenly regarded [the plaintiff's] failure-to-protect claim as withdrawn, and if they told [the plaintiff] that he had no grievance on file and that he needed to refile, then his situation … may be one in which the [grievance] process was unavailable per *Ross*." *Id.* at 371. As such, this Court vacated the district court's grant of summary judgment, holding that the allegations sufficiently alleged a dispute that the grievance process was unavailable because the plaintiff "should not have been required or expected to proceed to step two on what he was told was a nonexistent grievance." *Id.*

The case here presents an even clearer example of an unavailable grievance system than either *Hinton* or *Wheater*. While in *Hinton* and *Wheater* there was a dispute over whether officers mistakenly screened out the plaintiff's grievance, here it is undisputed that the prison improperly marked his grievance as untimely. Just as in *Hinton*, there is no method provided by Louisiana policy to appeal procedural rejections such as this, so Barnes had no means to try to remedy the mistake. Furthermore, like *Wheater*, Barnes was effectively barred from refiling another grievance because he would have been outside of the required 90-day window and there are no clear instructions provided through either prison policy or by individual prison officers that would have alerted Barnes how to proceed. Both cases confirm that the key inquiry focuses on the plaintiff and what remedies were available to him, not on how malicious the actions of the defendants were. By focusing on the mental state of Defendants' actions rather than their effects on Barnes, granting Defendants summary judgment on grounds of exhaustion conflicts with precedent of this Court.

Sister Circuits have similarly held that an officer's mistake or failure, whether malicious or not, may cause a grievance system to be unavailable because unavailability often rests on whether the plaintiff failed to exhaust due to no fault of their own. *See e.g.*, *Lanaghan v. Koch*, 902 F.3d 683, 688-89 (7th Cir. 2018) ("[T]he proper focus is not whether the defendants engaged in affirmative misconduct, but whether [the plaintiff] was not able to file the grievance within the time period

through no fault of his own"); *Sapp v. Kimbrell*, 623 F.3d 813, 822-23 (9th Cir. 2010) ("[I]mproper screening of an inmate's administrative grievances renders administrative remedies 'effectively unavailable' such that exhaustion is not required under the PLRA [because] [i]f prison officials screen out an inmate's appeals for improper reasons, the inmate cannot pursue the necessary sequence of appeals, and administrative remedies are therefore plainly unavailable"); *Dole v. Chandler*, 438 F.3d 804, 811 (7th Cir. 2006) ("Because [the plaintiff] properly followed procedure and prison officials were responsible for the mishandling of his grievance, it cannot be said that [the plaintiff] failed to exhaust his remedies … [because] prison authorities may not employ their own mistake to shield them from possible liability"); *Brown v. Drew*, 452 F. App'x 906, 908 (11th Cir. 2012) ([T]he administrative process was rendered unavailable to [the plaintiff] because the delay in delivering the response from the Regional Office to [the plaintiff] prevented him from being able to timely resubmit his appeal to the Regional Office as required.").

The district court also imposed an improper burden on Barnes to show that he fully exhausted his administrative remedies when it reasoned that he did not do so because he "does not allege or demonstrate that he took any efforts to request that the mistake be corrected or attempted to utilize the process again." ROA.292. This Court has held that courts may not require plaintiffs to take additional steps that are not required by the prison's grievance system to satisfy the exhaustion requirement.

15

*See Cowart v. Erwin*, 837 F.3d 444, 451-52 (5th Cir. 2016) ("Exhaustion is defined by the prison's grievance procedures, and courts neither *may add to* nor subtract from them"); *accord Turner v. Burnside*, 541 F.3d 1077, 1083 (11th Cir. 2008) (Although individuals in prison must exhaust their available administrative remedies, they are not required to "craft new procedures when prison officials demonstrate ... that they will refuse to abide by the established ones.").

In *Cantwell*, this Court carefully analyzed an analogous situation—when a prison fails to respond to a prisoner's grievance within the time required by its own regulations. *Cantwell v. Sterling*, 788 F.3d 507, 509 n.2 (5th Cir. 2015). It held that it is improper to require additional steps in a grievance process to find a plaintiff has exhausted. This Court explained that, "under some circumstances, a prison's failure to respond to a prisoner's grievance can result in the prisoner's administrative remedies being deemed exhausted." *Id.* (quoting *Wilson v. Epps*, 776 F.3d 296, 301 (5th Cir. 2015)) (internal quotations omitted). Specifically, if the grievance procedures "entitle[]" a prisoner to "move on to the next step in the process" without receiving a response from the prison first, then the prisoner "must" do so in order to exhaust. *Id.* (quoting *Wilson*, 776 F.3d at 301) (internal quotations omitted). But if the procedures "do not set out any additional steps that prisoners must take upon that time elapsing," then a prisoner will have exhausted available remedies when the deadline for a response passes, without taking further action. *Id.* (citing *Underwood*

16

*v. Wilson*, 151 F.3d 292 (5th Cir. 1998), overruled on other grounds as explained in *Gonzalez v. Seal*, 702 F.3d 785 (5th Cir. 2012)).

*Cantwell* also noted an error in burden-shifting. It held that "[t]he defendants had the burden to establish that there were available procedures that Cantwell did not exhaust, and the district court erred in not holding them to it." *Id.* The same occurred here. Louisiana's regulations did not entitle Barnes to move forward after the prison incorrectly rejected his grievance and neither Defendants, nor this Court, may go beyond Louisiana law in requiring additional steps to be taken to sufficiently exhaust.

## II. This Court Should Not Affirm on the Alternative Ground of Defendants' Entitlement to Qualified Immunity.

### A. The Court Should Not Determine the Issue of Qualified Immunity When It Was Not Addressed by the District Court Below

In their motion for judgment on the pleadings, Defendants argued that they were entitled to qualified immunity. ROA.208-10. The magistrate judge recommended granting summary judgment purely on its findings that Barnes did not exhaust his administrative grievances and it did not mention the question of whether Defendants are entitled to qualified immunity. ROA. 287-92. Because the district court did not so much as mention the issue of qualified immunity, or any merits question, it would be improper to address it at this stage.

As a general rule, a "federal appellate court does not consider an issue not passed upon below" which is "essential in order that parties may have the opportunity to offer all the evidence they believe relevant to the issues." *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) (citations omitted); *see also Wood v. Milyard*, 566 U.S. 463, 473, (2012). The lone exception is the "rare case in which a full understanding of the issues (can) be reached without the aid of findings." *Davis v. United States*, 422 F.2d 1139, 1142 (5th Cir. 1970) (citations omitted); *see also Roland, Inc. v. Kreitz Motor Exp., Inc.*, 438 F.3d 476, 483 (5th Cir. 2006) ("Absent special circumstances, a federal appellate court will not consider an issue passed over by a district court.").

This is not one of such rare cases. Many factual questions remain that are central to determining whether Defendants violated the Eighth Amendment which a district court is more equipped to develop. For example, the subjective prong of Barnes's Eighth Amendment claim necessarily involves a fact-heavy analysis about the Defendants' awareness of the risk of harm which this Court is not able to reach without further factual development. *See Longoria v. Texas*, 473 F.3d 586, 595 (5th Cir. 2006) (denying summary judgment for a portion of the defendants in a failure to protect claim when there remained questions of fact regarding whether defendants were on notice of the risk of harm because "[w]hether a prison official had

knowledge of a substantial risk to inmate safety is a question of fact over which this court lacks jurisdiction.").

Barnes, a *pro se* plaintiff, has not had the benefit of adequate discovery to develop his theory of liability for the court to adequately determine the merits of a qualified immunity defense. As this Court has explained, "[i]t is the responsibility of the courts to be sensitive to possible abuses [in the prison systems] in order to ensure that prisoner complaints, particularly *pro se* complaints, are not dismissed prematurely." *Taylor v. Gibson*, 529 F.2d 709, 713 (5th Cir. 1976). As such, it would be particularly improper for the Court to make a determination on qualified immunity when the district court did not reach the question below. *See Morgan v. Hubert*, 335 F. App'x 466, 472-73 (5th Cir. 2009) (denying qualified immunity even when a plaintiff did not plead important facts in a failure to protect case because the plaintiff should be allowed develop those facts through discovery to answer questions specific to qualified immunity in the court below); *Hinojosa v. Johnson*, 277 F. App'x 370, 376-79 (5th Cir. 2008) (reversing a grant of summary judgment in a failure to protect claim even though the court found there was not enough evidence about the known risk of harm, because the plaintiff could uncover more evidence in discovery).

**B.  Barnes Pleaded an Eighth Amendment Violation.**

Even if the Court considers this a "rare case" in which the Court should consider issues not reached below, Defendants are not entitled to qualified immunity because their failure to protect Barnes violated clearly established law. To determine if a defendant is entitled to qualified immunity, the first step is to consider whether, taking the facts as alleged in the light most favorable to the plaintiff, the defendant's conduct violated the plaintiff's constitutional rights. *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) Second, the court looks to whether the rights allegedly violated were clearly established. *Id.*

Under the Eighth Amendment, an incarcerated person has a constitutional right to be sheltered from the threat of harm or violence at the hands of other incarcerated people. *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). The Supreme Court has established that "a prison official may be held liable under the Eighth Amendment … if he knows that inmates face a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825 (1994). A plaintiff can prove an Eighth Amendment violation by showing first, that the plaintiff "is incarcerated under conditions posing a substantial risk of serious harm." *Id.* at 834 (internal quotation marks and citations omitted). Second, the prison official must have a sufficiently culpable state of mind, which, in prison conditions cases, is one of "deliberate indifference" to inmate health or safety. *Id.* Deliberate indifference is akin to

criminal-law recklessness, meaning a subjective awareness of the risk and a disregard of it. *Id.* at 836. The official's knowledge of the risk can be proven through circumstantial evidence, such as by showing that the risk was so obvious that the official must have known about it. *Id.* at 842.

Defendants clearly subjected Barnes to a substantial risk of serious harm when they knowingly placed him in a cell with Napoleon, a prisoner who killed another individual just days prior to his attack on Barnes. Napoleon was placed in administrative segregation by prison staff for violently bashing a prisoner's head in with a brick, killing him. ROA.13. The unit was dangerous, as there was another incident in the same unit where another prisoner was cut with a sharp object just prior to the attack on Barnes. *Id.* Napoleon directly told Defendants Lollis, Maples, Ashley and Miller, "if you put 'anyone' in this cell they be carrying him out on a stretcher." ROA.13. Napoleon then made direct threats to harm Barnes, which the officers ignored. *Id.* Not learning their lesson, Defendants placed Barnes in a cell with Napoleon and a razor, resulting in Barnes being cut from ear to ear. ROA.13-14.

The risk of serious bodily injury or death is evident from the fact that three deadly attacks happened in the span of two weeks—two of them with sharp weapons—without any intervention by Defendants. Furthermore, forcing Barnes to share a cell with someone who has just killed his cellmate is a clear risk of harm.

This Court has held that prisoners with a violent history or who make repeated threats of violence pose a substantial risk of harm. *See e.g.*, *Hinojosa v. Johnson*, 277 F. App'x 370, 376-79 (5th Cir. 2008) (reversing summary judgment when a plaintiff provided information about his attacker's unstable mental health history, holding that discovery could uncover more information about an individual's violent tendencies which could create a genuine issue of material fact); *Edmond v. Eaves*, 70 F. App'x 159, 160 (5th Cir. 2003) (holding that a plaintiff stated a failure to protect claim when he alleged his gang member attackers had a history of attacking other people and the gang made threats to the plaintiff before ultimately attacking him).

Defendants knew of the risk of harm to Barnes because of Napoleon's bloody history of violence in the facility and Napoleon's threats to continue doing so. This clear pattern of violence provides evidence that the Defendants subjectively knew about the risk of harm to Barnes. *See Farmer*, 511 U.S. at 842-43 (explaining that if a plaintiff presents evidence showing that a substantial risk of attacks was "longstanding, pervasive, well-documented, or expressly noted by prison officials in the past," then such evidence could be sufficient to permit a trier of fact to find that the defendant-official had actual knowledge of the risk). Defendant prison officials are responsible for making safety determinations concerning whether a prisoner is too dangerous to house with other prisoners. Yet, Defendants continued to place

Napoleon with other cellmates (and made matters worse by placing him in the cell with his razor), a complete disregard of the risk of harm to Barnes and others.

Defendants also knew of the risk of harm because Napoleon directly told Defendants about his intent to harm Barnes. After Napoleon killed another prisoner, he directly told Defendants, "If you put 'anyone' in this cell they be carrying him out on a stretcher." ROA.13. Barnes also alleges Napoleon continued to make threats about him directly after Defendants Miller and Sanford put Napoleon in the cell, which officers ignored. *Id.* Placing anyone in a cell with Napoleon and a razor after Napoleon himself told him he would maim his next cellmate was a disregard to a clear risk of harm. The officers acknowledged this assumed risk when one officer apologized after the incident, stating "Sorry that had to happen to you, but we had to put you somewhere, even if it[']s in the cell with someone like Napoleon." ROA.14.

Defendants argued to the district court that Barnes failed to establish that Defendants knowingly violated the law because "Plaintiff and Napoleon were not known to be enemies prior to this incident and had no prior negative history." ROA.209. *Farmer* directly contradicts this argument. In *Farmer*, the Supreme Court held, "a prison official [cannot] escape liability for deliberate indifference by showing that, while he was aware of an obvious, substantial risk to inmate safety, he did not know that the complainant was especially likely to be assaulted by the

specific prisoner who eventually committed the assault." *Farmer*, 511 U.S. at 843.

Furthermore, the Court held, "it does not matter whether the risk comes from a single

source or multiple sources, any more than it matters whether a prisoner faces an

excessive risk of attack for reasons personal to him or because all prisoners in his

situation face such a risk." *Id.* at 843.

Whether Defendants believed Napoleon was particularly targeting Barnes

because they were enemies or had a negative history is immaterial. Napoleon's direct

statements and violent history made it clear that the violence he was imposing was

not due to grudges or hostile relationships, but instead that he was directing his

violence at anyone he was housed with. Napoleon explicitly stated, "if you put

'*anyone*' in this cell they be carrying him out on a stretcher." ROA.13. (emphasis

added). Defendants created the necessary nexus for Napoleon's violence by placing

Barnes in a cell with him, despite Napoleon's statements foreshadowing his abuse,

ones that continued explicitly towards Barnes after Defendants placed him in

Napoleon's cell. *Id.; See Harper v. Dourrette*, 107 F. App'x 444, 445 (5th Cir. 2004)

(affirming a denial of summary judgment on qualified immunity in a failure to

protect case where the district court held that even though there was no documented

history of the plaintiff and his attacker being enemies, it was immaterial because the

defendants were aware of the risk and did nothing to address the risk of harm after his verbal requests).[3]

Furthermore, Defendants claim that they placed him with a known violent individual "for lack of an alternative" which therefore shields them from liability. ROA.209. Defendants argue that the prison officer's statement that it "had to happen to you, but we had to put you somewhere, even if it[']s in the cell with someone like Napoleon," implies that the Defendants were not deliberately indifferent because their decision was based on a lack of alternative housing options. *Id.* First, this argument relies on inferences in favor of Defendants when the standard of review requires the opposite. *See Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc). Second, Defendants put forth no evidence to support the conclusion that they had no such alternative. Regardless, this Court has held that administrative hurdles such as requiring approval for an alternative placements or defendants not having authority to make protective decisions does not "discharg[e] their duty to protect

---

[3] District courts in this Circuit have made similar holdings. *See e.g. Davis v. LeBlanc*, No. CV10-01920, 2012 WL 1854748, at *4 (W.D. La. Apr. 16, 2012), report and recommendation adopted, No. CIV.A. 10-1920, 2012 WL 1854732 (W.D. La. May 21, 2012) (denying qualified immunity because "[the plaintiff] need not allege that defendants had knowledge that [the plaintiff] was likely to be attacked by other inmates [because] [i]t is sufficient for purposes of this motion to dismiss that [the plaintiff] has alleged that Defendants were aware of the general, obvious risk to inmate safety posed by allowing inmates to roam freely between tiers at night"); *Coker v. Strain*, No. CIV.A. 08-678, 2010 WL 3922134, at *7 (E.D. La. Sept. 30, 2010) ("It is, however, no answer that [the defendant officer] did not foresee this particular attack.").

prisoners in their care." *Johnson v. Johnson*, 385 F.3d 503, 527 (5th Cir. 2004); *see also Luna v. Davis*, 59 F.4th 713, 717-18 (5th Cir. 2023) (denying qualified immunity when defendants claimed they should not face liability for transferring the plaintiff back to a dangerous housing assignment because their reasoning that it "was an unintentional act not meant to cause [the plaintiff] harm" was not a sufficient justification when the risk of harm was apparent in a pattern of violence).

### C. Barnes's Alleged Constitutional Violation Was Clearly Established.

To be "clearly established" for purposes of qualified immunity, "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635 (1987). The law can be clearly established even without prior cases that are on all fours with the present case, "so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Hope v. Pelzer*, 536 U.S. 730, 740 (2002) (internal quotation marks omitted). The Supreme Court has discouraged courts from defining rights so narrowly that plaintiffs cannot obtain redress for constitutional violation even though defendants were on notice that their behavior was illegal. *See Taylor v. Riojas*, 141 S. Ct. 52, 54 (2020); *McCoy v. Alamu*, 141 S. Ct. 1364 (2021).

Before the district court, Defendants argued that "courts of law have not clearly established a right for prisoners to be protected from cellmates with known

histories of violence against other inmates." ROA.209. Defendants cite to one unpublished district court opinion, *Wilson v. Hooper*, as their sole basis for this assertion. CV18-698, 2019 WL 6003347, at *3 (M.D. La. Oct. 22, 2019), report and recommendation adopted, CV 18-698, 2019 WL 5986691 (M.D. La. Nov. 13, 2019). The district court in *Wilson*, however, confirmed that "a prisoner has a constitutional right to be sheltered from the threat of harm or violence at the hands of other inmates." *Id.* at *3. *Wilson* dismissed the plaintiff's case on the merits without any holding as to the clearly established law regarding failure to protect claims. *Id*. On the merits, *Wilson* is distinguishable. In *Wilson*, the attacker was an individual with a history of mental health problems who was placed in a cell with the plaintiff. *Id.* at *2. Without warning to plaintiff or other officers, he hit the plaintiff with a metal oxygen tank resulting in a scar. *Id.* at *2. Outside of a general understanding that the plaintiff may be dangerous, the case did not present clear examples of previous violence by this particular attacker. *Id.* at *2-3. Furthermore, the assailant did not warn the defendants directly about potential future attacks, and the attack was completely unprovoked. *Id.* Here, Napoleon killed someone he was housed with two weeks prior to the attack on Barnes. ROA.13. Napoleon also explicitly gave Defendants warning of hurting anyone who was put in a cell with him and made threats to Barnes directly. *Id.* Thus, Defendants' reliance on *Wilson* was misplaced.

Furthermore, the Supreme Court has very clearly established that "[p]rison officials have a duty ... to protect prisoners from violence at the hands of other prisoners" because "having stripped [prisoners] of virtually every means of self-protection and foreclosed their access to outside aid, the government and its officials are not free to let the state of nature take its course." *Farmer*, 511 U.S. at 833 (1994) (citations omitted). In the context of qualified immunity, this Court has explicitly stated that "[i]t is well established that prison officials have a constitutional duty to protect prisoners from violence at the hands of their fellow inmates." *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (quoting *Longoria v. Texas*, 473 F.3d 586, 592 (5th Cir.2006)). Under this Court's precedent, it contravenes clearly established law to do nothing to protect prisoners from a clear threat of harm by another prisoner. *See Cantu v. Jones*, 293 F.3d 839, 844-45 (5th Cir. 2002) (refusing to reverse a denial of judgment as a matter of law based on qualified immunity because the jury found that the defendants created a circumstance that helped to ensure an attack happened that resulted in the plaintiff being stabbed with a razor); *Harper*, 107 F. App'x at 445 (affirming the denial of qualified immunity when a prisoner verbally requested protection and the defendants did nothing about it, because policy required action to be taken).

This court in *Johnson v. Johnson* clearly established that "it [is] abundantly clear that an official may not simply send the inmate into the general population to

fight off attackers" when the Defendant officials were alerted to a repeated pattern of previous attacks either verbally or in writing. 385 F.3d at 527. In *Johnson*, an incarcerated person was subject to sexual assault by a number of prisoners in his unit. As a result, he attempted to alert the prison about the danger through life endangerment forms and grievances, but many of the defendants did nothing to address the substantial risk of harm. *Id.* at 513. The defendants also made affirmative recognition of the threat after the attacks, stating he should "learn to f*** or fight." *Id.* This Court held that "it indeed contravenes clearly established law" to do nothing to protect a prisoner and make affirmative statements about the threat, when Defendants are aware of the obvious risk. *Id.* at 527.

Similarly here, Defendants simply sent Barnes to "let the state of nature take its course." *Farmer*, 511 U.S. at 833. Defendants knew that Napoleon had previously killed someone in the prison and Napoleon alerted the prison officials themselves of his intent to hurt his new roommate, and in particular Barnes. ROA.13. Yet, prison officials did absolutely nothing to protect Barnes and sent him to fight his attacker. Like *Johnson*, officers made explicit comments about the known risk of harm the assailant posed after the attack. As such, it clearly contravened established law to fail to take any actions to protect a prisoner from known threat of harm.

This Court's decision in *Luna v. Davis* is also instructive. 59 F.4th 713 (5th Cir. 2023). In *Luna*, the plaintiff argued that Defendants failed to protect him when

he was previously harassed and threatened in his housing assignment and was transferred to that same housing assignment where he was ultimately attacked. *Id.* at 714. This Court denied qualified immunity, holding that "the substantial risk of serious harm that Luna faced was apparent" because he had been harassed and threatened before his transfer (including death threats), he was assaulted almost immediately, and officers made direct statements that they were aware of a previous assault and the risk that moving the plaintiff could pose. *Id.* at 717. This case presents all the same facts—Barnes was previously harassed and threatened by Napoleon after being transferred to his cell, he was maimed almost immediately, and the officers directly made comments acknowledging the risk he faced. ROA.13-14.

Defendants are also not entitled to qualified immunity because, taking Barnes's allegations as true, their violations were obvious. The U.S. Supreme Court has recently reestablished that prison officials are not entitled to qualified immunity for Eighth Amendment violations when those violations are obvious, regardless of the whether existing precedential cases are analogous. *Hope,* 536 U.S. at 731. In *Taylor*, this Court granted qualified immunity to a prisoner who was housed in human sewage, reasoning that past precedent had only held that months on end of living in filth violated the Eighth Amendment, not a mere six days. *Taylor v. Stevens*, 946 F.3d 211, 222 (5th Cir. 2019). The Supreme Court summarily reversed, holding that "no reasonable correctional officer could have concluded that, under the extreme

circumstances of this case, it was constitutionally permissible to house [the plaintiff] in such deplorably unsanitary conditions for such an extended period of time." *Taylor v. Riojas*, 141 S. Ct. at 53. In *McCoy*, this Court granted qualified immunity to a prison guard who sprayed a prisoner in the face with mace without provocation, even though past precedent had held that an unprovoked punching or tasing would be unconstitutional. *McCoy v. Alamu*, 950 F.3d 226, 235 (5th Cir. 2020) (Costa, J., dissenting). The Supreme Court granted, vacated, and remanded, pointing this Court to its reversal in *Taylor* regarding the correct methodology to consider the qualified immunity defense. *McCoy*, 141 S. Ct. at 1364. The Supreme Court has thus reestablished that qualified immunity turns not on whether there is authority with the precise facts of the present case but on notice: would a reasonable official know that their conduct was illegal based on past precedent.

Defendants are not entitled to qualified immunity when it was plainly obvious that Defendants were putting Barnes at a serious risk of harm by placing him in a cell with Napoleon. Napoleon killed another prisoner just two weeks before Defendants placed him in a cell with Barnes; Napoleon informed Defendants of the risk by saying "if you put 'anyone' in this cell they be carrying him out on a stretcher;" he threatened Barnes once he was in the cell and the officers ignored it; and an official acknowledged the risk and his own deliberate indifference by stating, "Sorry that had to happen to you, but we had to put you somewhere, even if it[']s in

the cell with someone like Napoleon." ROA.13-14. No reasonable officer would have believed Barnes was safe from harm. Affirming on the alternative basis of qualified immunity would therefore be improper.

## **CONCLUSION**

This Court should reverse the district court's grant of summary judgment and remand for further proceedings.

Respectfully submitted,

/s/ *Amaris Montes*
Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
Phone: 202-455-4399
Fax: 202-217-3879
Email: amaris@rightsbehindbars.org

**CERTIFICATE OF SERVICE**

I hereby certify that on the date of filing a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: March 6, 2023

*/s/ Amaris Montes*
Amaris Montes

## <u>CERTIFICATE OF COMPLIANCE</u>

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and (B)(i) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 7,918 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Dated: March 6, 2023

Respectfully submitted,

/s/ *Amaris Montes*