No. 22-30122

UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

---

DONALD BARNES,

*Appellant,*

v.

DARRYL VANOY ET AL,

*Appellees.*

---

On Appeal from the United States District Court
For the Middle District of Louisiana
No. 3:19-CV-764

---

APPELLANT'S REPLY BRIEF

---

Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
(202) 455-4399

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................. i

**INTRODUCTION** ..................................................................................................1

**ARGUMENT** ..........................................................................................................2

    **I.   The Administrative Process was Unavailable When the Grievance Procedure Did Not Permit Barnes to Exhaust His Remedies, Including by Correcting Officers' Own Errors**..........................................................................2

    **II.   Defendants Have Abandoned Any Arguments Supporting a Qualified Immunity Defense** ........................................................................................14

**CONCLUSION**....................................................................................................14

**CERTIFICATE OF SERVICE** .........................................................................16

**CERTIFICATE OF COMPLIANCE** ................................................................17

# TABLE OF AUTHORITIES

**Cases**

*Allen v. Louisiana Department of Public Safety and Correction*, 2020-0443 (La. App. 1 Cir. 2/24/21), 322 So. 3d 258 reh'g denied (Mar. 29, 2021) ...................... 6
*Brantner v. Freestone County Sheriff's Office*, 776 F. App'x 829 (5th Cir. 2019) . 12
*Cole v. Carson*, 935 F.3d 444 (5th Cir. 2019) ................................................................ 6
*Davis v. Fernandez*, 798 F.3d 290 (5th Cir. 2015) ..................................................... 12
*Dillon v. Rogers*, 596 F.3d 260 (5th Cir. 2010) ..................................................... 8, 12
*Fisk Elec. Co. v. DQSI, L.L.C.*, No. CV-15-2315, 2015 WL 6696751 (E.D. La. Nov. 3, 2015) ................................................................................................................ 5
*Hill v. Snyder*, 817 F.3d 1037 (7th Cir. 2016) ......................................................... 8, 9
*Huskey v. Jones*, 45 F.4th 827 (5th Cir. 2022) ............................................................ 8
*Jones v. Bock*, 549 U.S. 199 (2007) ............................................................................... 6
*Medina v. Cont. Freighters, Inc.*, No. 5:21-CV-1224-JKP, 2022 WL 2762720 (W.D. Tex. Jan. 10, 2022) ......................................................................................... 5
*Roland, Inc. v. Kreitz Motor Exp.*, Inc., 438 F.3d 476 (5th Cir. 2006) .................... 14
*Ross v. Blake*, 578 U.S. 632 (2016) ..................................................................... 2, 7, 11
*Shifflett v. Korszniak*, 934 F.3d 356 (3d Cir. 2019) .................................................... 9
*Wheater v. Shaw*, 719 F. App'x 367 (5th Cir. 2018) ............................................... 13
*Williams v. Beauregard Par.*, No. 2:08-CV-355, 2010 WL 582748 (W.D. La. Feb. 18, 2010) ................................................................................................................ 5
*Williams v. Priatno,* 829 F.3d 118 (2d Cir. 2016) ....................................................... 2
*Yohey v. Collins*, 985 F.2d 222 (5th Cir. 1993) .......................................................... 14

**Statutes**

42 U.S.C. § 1997e .............................................................................................................. 2

**Other Authorities**

*Cambridge Advanced Learner's Dictionary & Thesaurus* (4th ed. 2013) .............. 11

**Regulations**

La. Admin. Code tit. 22, pt. I, §325 ........................................................... 3, 4, 5, 9, 10

# INTRODUCTION

Donald Barnes, a prisoner in the Louisiana state prison system, was brutally attacked by his cellmate after he repeatedly told Defendants of his intention to hurt Barnes. Defendants did nothing to protect him. Barnes filed a grievance within the 90-day time period required by the prison's regulations. Grievance officers in the facility mistakenly marked his grievance as untimely and rejected it. Without any instruction either by the grievance procedure policies or prison officers about how to proceed to another step of the grievance process or correct the officers' mistake, he had no other means to pursue an administrative remedy any further. This is a straightforward example of a grievance system that was unavailable within the meaning of the Prison Reform Litigation Act ("PLRA"), and the district court erred in granting summary judgement in favor of Defendants for failure to exhaust.

Defendants assert that Barnes should have blindly guessed about how to correct the grievance officer's mistake by resubmitting his grievance or by pursuing ad hoc methods to notify the officers of their own misrepresentations. In doing so, they apply an inconsistent interpretation of the Louisiana prison system grievance process and misunderstand governing precedent on how to interpret it. Defendants also impose an improper burden on Barnes to pursue additional steps not included in the state grievance process itself. This line of reasoning is contrary to the ample

guidance from circuit courts across the country concerning exhaustion, and would require Barnes and other prisoners to speculate as to what procedures to follow to fully exhaust administrative remedies. Furthermore, Defendants have also affirmatively abandoned any arguments on qualified immunity at this stage.

## ARGUMENT

I. **The Administrative Process was Unavailable When the Grievance Procedure Did Not Permit Barnes to Exhaust His Remedies, Including by Correcting Officers' Own Errors.**

The PLRA requires incarcerated people to exhaust available administrative remedies prior to filing a lawsuit in federal court. 42 U.S.C. § 1997e. "[U]nder the PLRA, a prisoner need exhaust only 'available' administrative remedies." *Ross v. Blake*, 578 U.S. 632, 638 (2016). The Supreme Court provided three illustrative examples of when an administrative remedy would be unavailable. These are: (1) when the administrative procedure "operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates"; (2) where the administrative scheme is "so opaque that it becomes ... incapable of use ... [and] no ordinary prisoner can discern or navigate it"; and (3) when "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id*. These examples are not exhaustive. *See e.g. Williams v. Priatno,* 829 F.3d 118, 123 n.2 (2d Cir. 2016) ("We note that the three circumstances discussed in *Ross* do not appear to be exhaustive.").

For Barnes, the grievance procedure became unavailable under examples two and three in *Ross*. Defendants do not dispute that Defendants incorrectly marked Barnes's grievance as untimely. ROA.213–14. This mistake was a misrepresentation, one that prevented him from moving on to step two and exhausting his administrative remedies, and falls under example three of *Ross*. Louisiana's grievance policy permits prisoners to correct their own errors, but not those of prison officials. La. Admin. Code tit. 22, pt. I, §325(I)(1)(c)(iii). Barnes had no means to appeal this decision once the grievance was rejected, and neither grievance officers nor the grievance procedures offered any instructions on how to exhaust after the officers made this mistake. If Barnes was required to take another action or attempt to appeal the decision anyway, no reasonable prisoner could have been expected to know this requirement. In that way, Barnes's situation is also like example two of *Ross*.

Defendants' arguments to the contrary are unconvincing, because they (i) apply a fundamental misunderstanding of in the Louisiana prison grievance procedure; (ii) ask the court to make inferences in their favor; (iii) place an unrealistic burden on prisoners to guess what grievance procedures to follow; and (iv) misapply the *Ross* standard and precedent from this Court.

> (i)   *Defendants' arguments rely on a misinterpretation of their own grievance procedures.*

Defendants' primary argument in their Answering Brief is that Barnes could have simply resubmitted his grievance to correct Defendants' error. Ans. Br. at 9 ("The ability of the offender to correct and resubmit his request is the primary reason the ARP process remained available to the plaintiff."). This conclusion is inconsistent with both the Louisiana grievance process and governing precedent on how to interpret it. If a grievance is rejected for untimeliness, the prisoner cannot proceed to step two. Instead, he "must correct the noted deficiencies and resubmit the request to the ARP screening officer." La. Admin. Code tit. 22, pt. I, §325(I)(1)(c)(iii). Defendants concedes that this plainly refers to the grievant's own errors but argues that an "equally logical reading" is that it also refers to the grievance officer's errors, and therefore Barnes could have followed the regulation by resubmitting and explaining the officer's mistake. Ans. Br. at 11. This interpretation reads the word "noted" entirely out of the regulation: the prisoner is not permitted to resubmit to correct *any* deficiency, but instead to fix the *noted* deficiency, i.e., the deficiency among "the reasons listed above" that was the basis of the rejection. Defendants' own mistake in calculating time was not the "noted deficiency" in the grievance, and the errors of prison officials is not among the "the reasons listed above." ROA.214. As such, it would have been impossible for Barnes to comply with the process as written.

Other uses of the phrase "noted deficiency" further demonstrate Defendants' reading of the term is not "equally logical." District courts in this Circuit have, on hundreds of occasions, dismissed complaints without prejudice but permitted the filing of an amended complaint so long as it attempts to fix the "noted deficiencies." *See, e.g.*, *Medina v. Cont. Freighters, Inc.*, No. 5:21-CV-1224-JKP, 2022 WL 2762720, at *2 (W.D. Tex. Jan. 10, 2022); *Fisk Elec. Co. v. DQSI, L.L.C.*, No. CV-15-2315, 2015 WL 6696751, at *6 (E.D. La. Nov. 3, 2015); *Williams v. Beauregard Par.*, No. 2:08-CV-355, 2010 WL 582748, at *2 (W.D. La. Feb. 18, 2010). Any of these courts would be surprised to receive an amended complaint that contained legal arguments that the district court opinion was wrong on the law instead of fixing the party's own mistakes. This is because the phrase "noted deficiencies" clearly refers to the deficiencies of the party, not the court's own errors of interpretation.

Other aspects of the grievance process further undercut Defendants' interpretation. Louisiana regulations dictate that "[a]t each stage of decision and review, offenders will be provided written answers that explain the information gathered or the reason for the decision reached along with simple directions for obtaining further review." La. Admin. Code tit. 22, pt. I, §325(F)(3)(a)(vii). Barnes's grievance form contained no "directions for obtaining further review," including no suggestion that he could submit the form or seek waiver from the warden. *See* ROA.214. This is because, per Louisiana's regulations, he could not

5

seek further review once his ARP had been rejected for untimeliness, by resubmission or otherwise.

As the Supreme Court established, the "'applicable procedural rules' that a prisoner must properly exhaust are defined not by the PLRA but by the prison grievance process itself," and "[c]ompliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones v. Bock*, 549 U.S. 199, 218, (2007) (citations omitted). Thus, this Court is bound to follow the text of state law regulations and cannot require Barnes to pursue means of grieving outside of these requirements. Louisiana state courts have clearly concluded that state law does not require prisoners to continue in the grievance process when a grievance officer mistakenly screens out a grievance and offers no additional steps to follow. *See Allen v. Louisiana Department of Public Safety and Correction*, 2020-0443 (La. App. 1 Cir. 2/24/21), 322 So. 3d 258, 261, reh'g denied (Mar. 29, 2021) (holding that the grievance system became unavailable when the plaintiff submitted a grievance form that prison officials erroneously rejected, because instead this misrepresentation "effectively precluded [the plaintiff] from exhausting his administrative remedies.")

> (ii) *Defendants' arguments require interpreting inferences in their favor, which is inappropriate on appeal.*

Defendants' arguments require this Court to read the record in their favor—which is not appropriate at this stage. Defendants provide no record support for their

claim that Defendants would have considered a resubmitted grievance despite the plain text of the rules suggesting otherwise. Defendants are therefore requesting that this Court make inferences in their favor which is improper, as all inferences must be made in favor of the nonmoving party. *See Cole v. Carson*, 935 F.3d 444, 452 (5th Cir. 2019) (en banc).

> (iii) *Requiring prisoners to hypothesize about what grievance procedures to follow conflicts with mandatory precedent.*

Defendants ask this Court to adopt an unmanageable rule that would conflict with precedent from the Supreme Court and sister circuits: that, when procedures provide a prisoner with no path for seeking an administrative remedy, the prisoner should simply guess. Defendants cite to *Ross v. Blake* as the authority for this contention, referencing the Court's assertion that "[w]hen an administrative process is susceptible of multiple reasonable interpretations, Congress has determined that the inmate should err on the side of exhaustion." 578 U.S. at 644. Defendants use of this citation is incorrect and misguided. The Court's statement is in reference to how confusing a grievance procedure must be in order for it to be unavailable, not a general principle that prisoners must err in the direction of taking additional steps not dictated by the written grievance process. *Ross* was clarifying that when the text of the instructions of a grievance procedure is ambiguous or offers multiple interpretations, prisoners should be thorough in pursuing exhaustion. Here, by contrast, Defendants affirmatively misled Barnes about his efforts to grieve when

they told him his grievance was untimely, and there were no steps to follow, as there were no instructions in the ARP process to resolve grievance officers' errors. Defendants' incorrect application of *Ross v. Blake* in this context would require prisoners to guess at additional requirements not stated in the grievance process to exhaust.

Instead, courts—including this one—have established a straightforward general principle regarding grievance processes: that prison officials cannot require prisoners to simply speculate what a grievance process entails when they are not told how to proceed. *See Huskey v. Jones*, 45 F.4th 827, 833 (5th Cir. 2022) (finding that it was unreasonable to expect a plaintiff to follow new grievance procedures by guessing that there was an updated grievance handbook when he was given previously outdated information); *Dillon v. Rogers*, 596 F.3d 260, 268 (5th Cir. 2010) ("When a prisoner has no means of verifying prison officials' claims about the administrative grievance process, incorrect statements by officials may indeed make remedies unavailable.").

Sister Circuits provide relevant guidance. For example, in *Hill v. Snyder*, prison staff returned a grievance unprocessed, with a notation that they had not been able to verify the alleged incident by viewing a video regarding the incident. 817 F.3d 1037, 1040 (7th Cir. 2016). The grievance officers did not tell the plaintiff what correction he needed to make so that the grievance could be processed, and the policy

8

did not tell him he could appeal this kind of finding. *Id.* Defendants argued that their response implied that he should have fixed the grievance to reflect the correct details about the incident, but the court was not persuaded, holding that the exhaustion requirement "does not invite prison and jail staff to pose guessing games for prisoners." *Id.* The court stressed that "[p]risoners are required to exhaust grievance procedures they have been told about, but not procedures they have not been told about" and that, requiring prisoners to "comply with a rule that the prison had never published before" was improper, rendering the grievance process unavailable. *Id.* (quoting *King v. McCarty*, 781 F.3d 889, 896 (7th Cir. 2015)) (internal quotations omitted); *see also Shifflett v. Korszniak*, 934 F.3d 356, 359 (3d Cir. 2019) (creating a per se rule that administrative remedies are rendered unavailable when grievance officers do not follow their own processes). Similarly here, this Court cannot require Barnes to enter into a "guessing game" about how to correct the grievance officer's mistake in order to reach the next level of the grievance process.

Defendants speculate as to what would have happened if Barnes engaged in the guessing game of attempting to correct the grievance officers' own mistakes, but even their speculations apply an impossible standard or incorrect reading of the grievance procedure. Defendants argue that Barnes could have requested an extension from the screening officer or a waiver from the Warden and that obtaining either of these exceptions to the grievance requirements was "equally as likely" as

9

not. Ans. Br. at 12. Yet, neither of these avenues would have resulted in successful exhaustion. For one, according to the ARP process, a prisoner may request an extension of "up to five days" from a screening officer. La. Admin. Code tit. 22, pt. I, § 325(J)(1)(c). Barnes received a reply to his timely grievance 101 days after being brutally attacked, 11 days after the 90-day requirement threshold. ROA.214. Therefore, obtaining a five-day extension would have done nothing to allow him to be within the 90-day threshold.

For another, though Defendants continuously argue that Barnes could have requested a waiver from the warden, the ARP process gives no guidance whatsoever about how to obtain a waiver from the warden, and who can actually request it—the ARP process simply states that the 90-day requirement "may be waived when circumstances warrant it [and] [t]he warden or designee shall use reasonable judgement in such matters." La. Admin. Code tit. 22, pt. I, § 325(G)(1). There is no information about whether prisoners must request a waiver, whether a grievance should be referred to the warden by another party to request a waiver, what form to use to request it, the time period when a waiver can be requested, or what "circumstances warrant" a waiver. As Defendants note, Barnes's understanding of the waiver process was that a waiver may only be obtained if the "Director forwarded the ARP to the Warden for consideration of the waiver of [the] 90-day rule," not that

10

he himself could request one. Ans. Br. at 15.[1] Defendants cite no competing record evidence. Perhaps Barnes could have requested a waiver directly, perhaps it needed to be requested by the Director, perhaps some mysterious third option was available—the grievance process is completely silent as to what was proper. Barnes's reasonable understanding of the unclear grievance process establishes that if Barnes was required to follow the waiver process to fully exhaust his administrative grievances, the waiver process is too opaque to understand for an ordinary prisoner, meeting the second example under the *Ross* standard.

*(iv) Defendants misinterpret Ross's illustrative categories of unavailability.*

Fourth and finally, Defendants mistakenly argue that this case does not meet the unavailability categories under *Ross*. Grievance officers' misrepresentation of Barnes's grievance as untimely cleanly fits within the third example of unavailability in *Ross*—a remedy is unavailable when "prison administrators thwart inmates from taking advantage of the grievance process through machination, misrepresentation or intimidation." *Ross*, 578 U.S. at 638. Defendants mistakenly argue that Barnes "concedes the third *Ross* circumstance is inapplicable here by arguing 'trickery lies, or threats' are not necessary to find a grievance system unavailable.'" Ans Br. at 16–17. Defendants misunderstand Barnes's Opening Brief, and the applicable case law in this case. There is no question that there is a misrepresentation here. *See*

---

[1] This information cited by Defendants is not included in the Appendix.

*Cambridge Advanced Learner's Dictionary & Thesaurus* (4th ed. 2013) (defining the term *misrepresentation* as "something that misrepresents an idea, situation, or opinion"). Defendants told Barnes that he untimely filed his grievance when he in fact filed his grievance within the time required. ROA.214. Yet, the district court applied the inappropriate standard of requiring that the grievance officers use "trickery, lies or threats" to find the grievance process unavailable. ROA.291. The court's mistake is evident because there is ample case law in this Circuit and in Sister Circuits that have held that a grievance procedure becomes unavailable when an officer misrepresents the grievance process by mishandling a grievance or not providing individuals with the proper information to allow individuals to fully exhaust. *See* Op. Br. at 11–17; *see also Davis v. Fernandez*, 798 F.3d 290, 295 (5th Cir. 2015) ("Grievance procedures are unavailable to an inmate if the correctional facility's staff misled the inmate as to the existence or rules of the grievance process so as to cause the inmate to fail to exhaust such process.").

Defendants offer many unpersuasive arguments about why the case law that supports this contention is distinguishable. For example, Defendants argue that *Davis v. Fernandez*, 798 F.3d at 295, *Dillon v. Rogers*, 596 F.3d at 268–69, and *Brantner v. Freestone County Sheriff's Office*, 776 F. App'x 829, 834 (5th Cir. 2019), are inapplicable because these cases support the contention that "remedies are 'unavailable if the prisoner is not informed of the procedure in its entirety and is

12

correspondingly unable to verify prison officials claims about the procedure" when "plaintiff admitted he had access to the whole process" so "no argument is made that he was unaware or confused about any provision of the regulation." Ans. Br. at 17. Yet, the grievance policies provide no information at all about what to do to correct grievance officers' errors, so, like these cases, there was not sufficient information for Barnes to proceed to another step of the grievance process. If Barnes was expected to follow procedures that were not clearly delineated in the grievance process such as obtaining a waiver for the 90-day requirement from the warden, Barnes was not fully informed through the grievance policy to know how to go about obtaining one, which would meet the second unavailability category.

Defendants also unsuccessfully distinguish this case from *Wheater v. Shaw*, 719 F. App'x 367 (5th Cir. 2018). Defendants correctly point out that in *Wheater*, there was a dispute over whether the plaintiff previously withdrew his grievances and what the prison officials told the plaintiff. Ans. Br. at 19. Defendants argue that *Wheater* is distinguishable because the plaintiff in that case refiled his grievances when he was instructed to, and there was a dispute of fact about whether the plaintiff withdrew his grievance. *Id.* Just as Defendants concede, "no disputes of fact have been identified" in the present case, which is what makes this case even more clear-cut than *Wheater*. There is no question that Barnes filed his grievance correctly and that grievance officers incorrectly marked his grievance as untimely. Where in

13

*Wheater*, the defendants instructed the plaintiff to refile his grievances, grievance officers gave Barnes no such instruction. When a grievance officer mistakenly marked his grievance as untimely, gave Barnes no further on how to proceed, and the grievance procedure was silent on how to correct grievance officers' errors, Barnes had no way to fully exhaust, and the grievance process became unavailable.

### II. Defendants Have Abandoned Any Arguments Supporting a Qualified Immunity Defense.

Defendants have also affirmatively abandoned any arguments on qualified immunity at this stage. *See* Ans. Br. at 6–7 ("The defendants agree that, in these circumstances, the Court should not adjudicate the qualified immunity defense."); *see also Yohey v. Collins*, 985 F.2d 222, 224–25 (5th Cir. 1993) (holding that arguments must be briefed to be preserved). Because the district court did not so much as mention the issue of qualified immunity, and Defendants agree that it is inappropriate to address the question, it would be improper for this Court to resolve it at this stage. *See Roland, Inc. v. Kreitz Motor Exp.*, Inc., 438 F.3d 476, 483 (5th Cir. 2006) ("Absent special circumstances, a federal appellate court will not consider an issue passed over by a district court.").

### CONCLUSION

This Court should reverse the district court's grant of summary judgment and remand for further proceedings.

Respectfully submitted,

/s/ *Amaris Montes*
Amaris Montes
Samuel Weiss
RIGHTS BEHIND BARS
416 Florida Avenue NW, Unit 26152
Washington, DC 20001
Phone: 202-455-4399
Fax: 202-217-3879
Email: amaris@rightsbehindbars.org

## CERTIFICATE OF SERVICE

I hereby certify that on the date of filing a copy of the foregoing was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: April 24, 2023

*/s/ Amaris Montes*
Amaris Montes

# CERTIFICATE OF COMPLIANCE

I hereby certify that this document complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(A) and (B)(i) and contains, excluding the parts of the document exempted by Fed. R. App. P. 32(f), 3,349 words. This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font size and Times Roman.

Dated: April 24, 2023

                                              Respectfully submitted,

                                              /s/ *Amaris Montes*